Edward A. Collins and Leefa D. Collins v. Commissioner.
Collins v. Commissioner
Docket No. 43660.
United States Tax Court
T.C. Memo 1954-180; 1954 Tax Ct. Memo LEXIS 68; 13 T.C.M. (CCH) 983; T.C.M. (RIA) 54286; October 19, 1954, Filed *68 Edward A. Collins, pro se. Donald J. Fortman, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency of $422.81 in income tax of petitioners for the calendar year 1943. [1]
The question presented is whether petitioners were entitled to deduct under section 23(k), Internal Revenue Code of 1939, amounts claimed to be bad debts in 1942. Findings of Fact Certain facts were stipulated by the parties and are hereby found. Petitioners, husband and wife, filed a joint income tax return for the calendar year 1943 with the collector of internal revenue for the third district of New York. In Schedule C of petitioners' 1942 income tax return were listed the following: "Item 1.
Advance to J. Dyner, 11-49
44th Road, Long Island City,
on March 2, 1942, in the
amount of $1,000 (uncollected).
"Item 2.
Advance to J. Dyner, 11-49
44th Road, Long Island City,
on March 14, 1942, in the
amount of $1,800 (uncollected.)" These items are alleged to have consisted *69 of part or all of checks in the amounts of $2,000 and $1,800, respectively, made payable to J. Dyner. Petitioners conducted a business as business consultants in New York during 1942. They occupied, as subtenants, certain offices within a suite of offices leased to the Universal Machine Tool Manufacturing Company, Inc., hereinafter referred to as Universal, of which Jacob Dyner was managing director; after June or July 1942 they occupied the entire suite, including the offices previously occupied by Universal, until about July 1943. About March 2 or 6, and March 14, 1942, petitioners were requested by Dyner to pay to him certain sums. Petitioners transferred these amounts to Dyner with knowledge that he desired and required the sums to meet payrolls of employees of Universal. Petitioners already owned a one-third and Dyner a two-thirds interest in Universal. No part of the $2,000 and $1,800 in checks, if any, was intended as an adavnce or loan to Dyner, and petitioners did not intend at the time the checks were given that Dyner repay them. Huntervan Realty Corporation was a real estate holding company organized by Dyner. Huntervan Realty Corporation did not go into bankruptcy *70 during the year 1942 but Universal was petitioned into bankruptcy during 1942. Petitioners did not have any communication with Dyner after May 23, 1942. Opinion Respondent's contention that petitioners' burden of proof has not been borne must be sustained on the record even if we accept the unsupported testimony that payments in the amounts claimed were made in the first place and that in addition they were not recovered. It is impossible on petitioners' own statements to make a finding that there was ever a debt which could or did in fact become worthless. Prior statements by petitioners made under oath at a time closer to the actual events by many years would justify an inference that what was intended was some kind of investment. In December 1942, over 10 years before the testimony in the present proceeding, petitioners made a statement which indicates that the payments in controversy were intended as a capital contribution to Universal Machine Tool Manufacturing Company. [2] Five years later they suggest that the sums were "conditionally intended as an investment in Huntervan Realty Corporation." But it is categorically denied that they were "intended as an advance to the *71 said Jacob Dyner." Since that is the only claim now made by petitioners, it seems evident that their statements are too inconsistent and unreliable to form the basis for any conclusion. The burden of proof having rested upon them, we find it impossible to find that there was a debt owing from Jacob Dyner irrespective of whether it arose in the amount now claimed or ever became worthless. *72 Under the circumstances we have been unable to find as a fact that there was any indebtedness at any time from Jacob Dyner to petitioners. No such debt could accordingly ever have become worthless and respondent's determination must be approved. Decision will be entered for the respondent. Footnotes
1. The deduction in dispute arose in 1942, but 1943 is involved because of the Current Tax Payment Act of 1943.↩
2. According to petitioners' sworn statement, a proof of claim filed by them in December 1942 in the bankruptcy of Universal Machine Tool Manufacturing Company, Inc. alleged: "* * * That the sum of $1,000.00 was paid by the said creditor to Jacob Dyner as president of Universal Machine Tool Manufacturing Company, Inc. * * * for the purpose of aiding him in meeting the payroll of Universal's wage earners * * *" [Italics added.] Nevertheless, petitioners in the same sworn statement of July 1947 say: "With respect to the aforesaid advance * * * it is pertinent to state that: (1) it was not intended as an investment in the Universal Machine Tool Manufacturing Company, Inc.; (2) it was not intended as an advance to the said Jacob Dyner; (3) it was conditionally intended as an investment in Huntervan Realty Corporation * * *"↩